*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GRANDBERRY/ALI/SILVER, Minors.

UNPUBLISHED
July 28, 2022

No. 359072
Ingham Circuit Court
Family Division
LC No. 16-001632-NA

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her six children, OG, RA, XS, KS1, KS2, and XA, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).[1] We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court erred by finding that a statutory ground for termination was established by clear and convincing evidence. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's decision for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. When applying this standard, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

---

[1] The trial court also terminated the parental rights of the fathers to the five older children, but they are not parties to this appeal.

The trial court found that grounds for terminating respondent's parental rights were established under MCL 712A.19b(3)(c)(*i*), (g), and (j), which allow for termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Initially, we note that § 19b(3)(g) requires a court to consider a respondent's financial ability to provide proper care and custody, and the trial court did not make any findings regarding respondent's finances. Thus, the trial court clearly erred by finding that § 19b(3)(g) was established by clear and convincing evidence. However, this error is harmless because it is only necessary to establish one statutory ground for termination, *In re VanDalen*, 293 Mich App at 139, and the trial court did not clearly err by finding that §§ 19b(3)(c)(*i*) and (j) were both established by clear and convincing evidence.

With respect to § 19b(3)(c)(*i*), the trial court did not clearly err when it found that respondent had failed to rectify the conditions that led to the adjudications and was not reasonably likely to do so within a reasonable time considering the children's ages. Respondent's initial involvement with Children's Protective Services (CPS) began in 2006, after respondent gave birth to her first child at age 15. By 2010, she had stopped participating in services and her parental rights to her first two children were terminated. The trial court obtained jurisdiction over OG and RA in 2017, after respondent entered a plea of admission to allegations that her rights to her two older children were previously terminated, that CPS had been called to her home in relation to OG and RA, that she failed to attend feeding sessions or receive instructions relative to RA, and that she had only visited RA for 13 out of 79 days.

Respondent was initially compliant with services and the two children were even returned to her care for six months. But respondent then became homeless and noncompliant with the services offered to her, and the two children again were removed from her care. A worker with the court's Intensive Neglect Services program had to ask the trial court to prohibit respondent

from attending RA's medical examinations because respondent had verbally attacked a physician, and RA's foster-mother was afraid that respondent would not allow the child to go home with her. Respondent also was furnished with an in-home nurse, but she discontinued that service. In the prior proceeding, respondent pleaded no contest to allegations that she had an altercation with her mother, and was involved in physical altercations with a neighbor. Respondent continued this aggressive, uncooperative, and violent behavior during the instant case. She continued to have altercations with many individuals, including physicians, caseworkers, and drug screeners. In particular, caseworker Kylie Hukill testified that respondent obtained housing before the June 24, 2020 review hearing, but respondent would not allow Hukill into the new home to conduct a home study. On another occasion, caseworker Sasha Donahoo testified that respondent's current apartment was suitable for the children, but Donahoo was unable to verify who was living with respondent. Donahoo also testified that she observed problems during parenting time related to respondent's interactions with staff in front of the children. Respondent would become agitated and maintain that workers were trying to steal her children. Respondent admitted that she had been verbally argumentative during parenting time.

Because of the issues during parenting time, and respondent had again given birth, Donahoo referred respondent for additional parenting classes with Spectrum Health, but respondent told Donahoo that she did not need the additional classes. Respondent also was provided with a referral for therapy through Community Mental Health, but she would not provide Donahoo with the therapist information or provide a release to allow Donahoo to obtain the information.

Donahoo testified about respondent's altercation over a knife that she brought to a parenting-time visit. Respondent's "lack of basic self-management skills" continued throughout the case. She allowed an unapproved caregiver, who recently had been released from prison for assault, to watch the children while respondent gave birth in 2019. Respondent also admitted that she failed to obtain prenatal care when she was pregnant with XA, and that she hid the pregnancy, and the baby, from the court and DHHS. As she had done during the previous proceeding, respondent also stopped participating in services. She participated in therapy with Child and Family Charities from August 2020 to May 2021, but was discharged because of repeated absences. Respondent acknowledged that she became angry after she was no longer allowed visits with her children at the Child and Family Charities facility, and she discontinued her therapy services even though she could still have continued in therapy with that provider. When drug use became a concern, respondent refused to admit that she had a problem, even though one of her children was born with cocaine in her system and another was diagnosed with fetal-alcohol syndrome. Additionally, respondent missed 80 out of 115 scheduled drug screens. Respondent also acknowledged that she had been banned from one testing facility after she was involved in a verbal altercation with staff.

In sum, as the record shows, respondent made very little progress during the time the children were under the court's jurisdiction. Thus, the trial court did not clearly err by finding that the conditions that led to the adjudications continued to exist. Moreover, considering the length of time the children had been in care and respondent's lack of progress with services, as well as her past CPS history, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent would be able to rectify the conditions within a reasonable time.

With respect to § 19b(3)(j), the trial court also did not clearly err by finding that the children were reasonably likely to be harmed if returned to respondent's care. The trial court's decision is supported by substantial testimony, including a number of admissions by respondent. There is ample testimony in the record about respondent's inability or unwillingness to comply with services. "Failure to substantially comply with a court-ordered case service plan 'is evidence that return of the child to the parent may cause a substantial risk of harm to the child's life, physical health, or mental well being.' " *In re Trejo*, 462 Mich 341, 346 n 3; 612 NW2d 407 (2000), quoting former MCR 5.973(C)(4)(b). Donahoo testified that respondent did not have the ability to appropriately care for the children, and that respondent's home was not currently fit for the children's return because Donahoo did not know who was living with respondent or who would be around the children. Thus, the evidence supports the trial court's finding that termination was also warranted under § 19b(3)(j).

## II. BEST INTERESTS

Respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). A trial court's decision regarding a child's best interests is reviewed for clear error. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). Factors to be considered include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). A trial court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. Respondent did not complete services and did not benefit from the services she did complete. Further, considering respondent's lack of progress over the four years this case was pending, there is no reasonable likelihood that respondent would be able to parent the children in the foreseeable future. Moreover, caseworker Donahoo testified that respondent did not have a strong bond with either OG or RA, and did not have a bond at all with her other children. By contrast, all of the children had strong bonds with their respective foster-parents. The children were receiving consistent medical and mental health treatment, and one-on-one attention that respondent was unable to provide. Moreover, all of the foster homes were willing to adopt and provide long-term placement for the children.

As noted by the trial court, the children were currently in both relative and nonrelative placements. The trial court considered the relative placements, but found that termination of respondent's parental rights to those children was still in their best interests. Donahoo explained that the relationships between the foster-parent relatives and respondent were strained. She also explained that there had been a lot of dishonesty and drama by respondent, such that the foster-families were "just kind of done with both of the parents at this point." A preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights was in the children's best interests.

## III. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan